UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHYENNE M.[1],                                    Case No. 2:23-cv-1475
          Plaintiff,                              Litkovitz, M.J.

vs.

COMMISSIONER OF                        **ORDER**
SOCIAL SECURITY,
          Defendant.

Plaintiff Chyenne M. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  This matter is before the Court on plaintiff's Statement

of Errors (Doc. 11), and the Commissioner's response in opposition.  (Doc. 15).

## I. Procedural Background

Plaintiff protectively filed her applications on February 2, 2021, alleging disability

beginning March 5, 2020, due to a back injury, left hip replacement, right hip replacement,

inability to walk or stand for a long period of time, left leg locks up, and depression.  (Tr. 2049-

55, 2056-57, 2085).  Plaintiff's applications were denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative

law judge (ALJ) Karen Kostol.  Plaintiff, represented by counsel, and a vocational expert (VE),

appeared telephonically and testified at the ALJ hearing on February 3, 2022.  (Tr. 378-411).  On

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

March 14, 2022, the ALJ issued a decision denying plaintiff's DIB and SSI applications.  (Tr. 269-91).  This decision became the final decision of the Commissioner when the Appeals Council denied review on March 2, 2023.  (Tr. 1-7).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not
> disabled.  If the claimant cannot make an adjustment to other work, the claimant
> is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id*.; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] met the insured status requirements of the Social Security Act
   through December 31, 2025.

2. The [plaintiff] has not engaged in substantial gainful activity since March 5,
   2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments:  avascular necrosis of
   the bilateral hips, status post total hip replacements of the bilateral hips;
   residuals of right meniscectomy and anterior cruciate ligament (ACL)
   thermal reduction; mild multilevel degenerative disc disease of the lumbar
   spine; chronic pain, depression related to chronic pain/physiological
   condition; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments
   that meets or medically equals the severity of one of the listed impairments in

3

20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the work must: never entail climbing of ladders, ropes, or scaffolds, kneeling, or crawling; be limited to occasional climbing of ramps or stairs, balancing, stooping, or crouching; avoid concentrated exposure to extreme cold, excessive vibration, and hazards such as dangerous moving machinery and unprotected heights, be afford[ed] the opportunity to brief one to two minute changes of position at intervals not to exceed 30 minutes without being off task; and be limited to simple, routine, and repetitive tasks.

6. The [plaintiff] is unable to perform past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1986 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high-school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[3]

---

[2] Plaintiff's past relevant work was as a nursing assistant, a semi-skilled, medium position and a bindery worker/mailer, a semi-skilled, light position.  (Tr. 284, 407).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary-exertion occupations such as document preparer (149,000 jobs in the national economy), toy stuffer (122,000 jobs in the national economy), and inspector (40,000 jobs in the national economy).  (Tr. 285, 408-09).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from March 5, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 275-85).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry:  (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B*., 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D.  Specific Errors

Plaintiff alleges the ALJ erred in evaluating the persuasiveness of the opinions of Dominic Haynesworth, M.D., and Michael Faust, Ph.D.   According to plaintiff, the ALJ violated the applicable regulations by failing to properly consider the  supportability and consistency factors, and those errors resulted in an inaccurate residual functional capacity.  (Doc. 11 at PAGEID 3792-99).

The Commissioner counters the ALJ adequately addressed the factors of consistency and supportability pursuant to the regulations, and her residual functional capacity was based on the evidence of record.  (Doc. 15 at PAGEID 3812-18).

### 1.  Social Security Regulations after March 27, 2017

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions.  *See* 20 C.F.R. § 404.1520c and 416.920c (2017);[4] *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).  These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[5]  *Id.*  The Commissioner will "not defer or give any specific

---

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  For claims filed on or after March 27, 2017, these regulations are found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c, respectively.  The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.  Because plaintiff's application was filed after March 2017, the new regulations apply to her case.

[5] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion."  *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[6], including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence[7] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). "In practice, this means that the 'supportability' factor 'concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence.'" *Teresa A. v. Comm'r of Soc. Sec.*, No. 2:23-cv-036, 2024 WL 62646, at *4 (S.D. Ohio Jan. 5, 2024) (quoting *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-cv-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2,

---

[6] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[7] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

With respect to the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). An evaluation of the consistency factor "involves comparing a medical opinion or prior administrative medical finding with *the evidence from other medical sources and nonmedical sources* in the claim." *Teresa A.*, 2024 WL 62646, at *4 (quoting *Cindy F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-00047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2) (emphasis added)).

The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

8

2.  **The ALJ did not err in finding the opinions of Dominic Haynesworth, M.D., unpersuasive.**

Plaintiff treated at Allied Health and Chiropractic beginning in July 2019 and received physical therapy from a variety of providers in collaboration with and under the direction of Dr. Haynesworth during plaintiff's approximately two and half years of therapy.  (Tr. 3295-3507, 3511-3549, 3690-3737).   In December 2021, Dr. Haynesworth completed a medical source statement for purposes of plaintiff's application for disability benefits.  On that form, he listed plaintiff's diagnoses as a right ACL [anterior cruciate ligament] tear, right meniscus tear, right hip AVN [avascular necrosis], and lumbar spine degenerative disc disease.  (Tr. 3612).  He noted plaintiff's symptoms included right leg and lower back pain.  (*Id.*).  Clinical findings included decreased range of motion of the right hip, right knee, and lumbo-sacral spine, pain, stiffness, and weakness.  (*Id.*).  Dr. Haynesworth opined that plaintiff can stand and walk for less than two hours in an eight-hour workday; she can sit for about two hours in an eight-hour workday; she must shift positions at will from sitting, standing, or walking; she needs to walk every sixty minutes for five minutes; she needs unscheduled breaks during a workday, four-to-eight times a day for ten-to-fifteen minutes; she will likely be off-task ten percent or of the workday; and she will be absent from work about four days per month.  (Tr. 3612-13).  In terms of symptoms causing a need for breaks, Dr. Haynesworth checked the boxes for muscle weakness and "pain/paresthesias [sic], numbness."  (Tr. 3612).  Question five on the form asks:  "Are your patient's impairments (physical impairments plus any emotional impairments) as demonstrated by signs, clinical findings and laboratory or test results *reasonably consistent* with the symptoms

and functional limitations described above in this evaluation? . . . If no, please explain[.]" (Tr.

3613).  Dr. Haynesworth marked the "no" box but did not provide an explanation.

The ALJ determined that Dr. Haynesworth's opinions were not persuasive, stating:

> Dr. Haynesworth provided very little support for his assessments, generally just completing a check box form notating the claimant's history of right knee ACL tear, right meniscus tear, right hip AVN, and lumbar spine degenerative disc disease. While treatment records from Allied Health and Chiropractic indicates ongoing pain, tenderness, trace swelling, some reduced range of motion, only conservative ongoing treatment was recommended and diagnostic imaging found only mild abnormalities of the lumbar spine, but she remained able to ambulate with an antalgic gait.  The undersigned notes that specifically, Dr. Haynesworth provided no explanation why the claimant would be absence from work for such significant periods of time.  Accordingly, the undersigned finds the assessments of Dr. Haynesworth are not persuasive.

 (Tr. 282).

The ALJ's decision finding Dr. Haynesworth opinions "not persuasive" is substantially

supported by the evidence.  The ALJ reasonably determined that Dr. Haynesworth's medical

source statement was not supported by objective medical evidence or supporting explanations

and was inconsistent with plaintiff's conservative treatment and diagnostic imaging.  (Tr. 282).

Plaintiff initially contends the ALJ erred by discrediting Dr. Haynesworth's opinions

based on his use of a check-box form.  "While checklist opinions are not per se unreliable in this

context, it is not improper for an ALJ to take into consideration the format of a medical opinion,

especially in light of other factors in the record that signal unreliability." *Kepke v. Comm'r of*

*Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016).  An ALJ may properly discount a medical

opinion where the questionnaire "fail[s] to provide any explanation for his responses."  *Id*. (citing

*Price v. Comm'r of Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009)).  "Courts in the

10

district routinely find that in the absence of explanatory support or reference to objective findings, such conclusory forms lack supportability." *Renee M. v. Comm'r of Soc. Sec.*, No. 3:23-cv-34, 2024 WL 1343582, at *3 (S.D. Ohio Mar. 29, 2024) (citing *Zachariah G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1600, 2022 WL 883769, at *9 (S.D. Ohio March 25, 2022), *report and recommendation adopted*, 2022 WL 2339444 (S.D. Ohio June 29, 2022) ("[B]ecause the statement was in the form of a checklist, without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-cv-01290, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion.") (citing cases)).

The ALJ here reasonably found that Dr. Haynesworth's opinions were not supported because he failed to provide supporting explanations for the extreme limitations he gave. The ALJ did not "dismiss" Dr. Haynesworth opinions by relying solely on the check-box nature of the form. Rather, the ALJ acknowledged that the Allied Health and Chiropractic treatment records reflected plaintiff's ongoing complaints of pain, tenderness, trace swelling, and some reduced range of motion. However, as the ALJ reasonably determined, Dr. Haynesworth failed to explain how these clinical findings supported the less than sedentary work limitations set forth in the form opinion. The ALJ also reasonably noted that Dr. Haynesworth failed to explain why plaintiff was likely to absent from work four days per month. This meets the ALJ's articulation requirement for her supportability analysis.

Plaintiff also takes issue with the ALJ's failure to cite specific pages when referencing her treatment records from Allied Health and Chiropractic, and she alleges the ALJ "ignored the vast medical record that documented" her impairments. (Doc. 11 at PAGEID 3795). She maintains the ALJ's "barebones 'analysis'" of Dr. Haynesworth's opinions does not comply with the requirements of § 404.1520c. (*Id*.). The Court disagrees and finds the ALJ properly considered the medical record as a whole and reasonably determined that Dr. Haynesworth's assessment was not consistent with plaintiff's treatment records and diagnostic testing.

An ALJ "need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors," and a reviewing court is able to follow the ALJ's reasoning. *Ford v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-00524, 2023 WL 2088157, at *18 (N.D. Ohio Jan. 31, 2023), *report and recommendation adopted,* 2023 WL 2080159 (N.D. Ohio Feb. 17, 2023); *see also, Elizabeth A. v. Comm'r of Soc. Sec. Admin.,* No. 2:22-cv-02313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (An ALJ need not use "'magic words or any specific phrasing' to comply with the applicable regulations.")(quoting *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023)). Despite her failure to cite specific page numbers in the record, the ALJ thoroughly discussed plaintiff's medical records in the balance of her decision such that the Court may meaningfully review the ALJ's consistency finding. And while the ALJ did not use the term "consistency" when evaluating Dr. Haynesworth's opinion, the ALJ reasonably found that plaintiff's conservative ongoing treatment and diagnostic imaging stood in contrast to Dr. Haynesworth's opined limitations.

For example,  the ALJ noted plaintiff's history of avascular necrosis of the bilateral hips, requiring bilateral hip replacements.  (Tr. 279).  She noted that plaintiff's hip condition was further complicated due to issues with her right knee, lumbar spine, chronic pain, and body habitus issues.  (*Id*.).  Kim L. Steams, M.D., performed a left total hip replacement on May 6, 2020, and a total right hip replacement on August 21, 2020, at the Cleveland Clinic, Lutheran Hospital.  (Tr. 2514-2718, Tr. 2719-2894).

Due to continued pain after plaintiff's hip replacement surgeries, she underwent additional imaging on December 28, 2020, at St. Vincent Charity Medical Center, which found the right total hip arthroplasty was in anatomic alignment without periprosthetic lucency or fracture, and the left hip arthroplasty was in anatomic alignment.  (Tr. 279, Tr. 2895-96).  Overall, the imaging impression indicated the right total hip arthroplasty was without apparent complication. (Tr. 279, Tr. 2895).

The ALJ acknowledged that plaintiff continued to report having "a lot of hip and back pain" four months after her right hip surgery.  (Tr. 279).  Despite plaintiff's report of pain, Dr. Steams noted x-rays of plaintiff's pelvis were "excellent" and recommended a muscle relaxer for treatment.  (*Id*., Tr. 2901).  As the ALJ noted, plaintiff displayed normal musculoskeletal range of motion on February 17, 2021.  (Tr. 280).  During an examination on April 22, 2021, plaintiff displayed normal gait, intact sensation, and lower extremity strength.  (Tr. 280, Tr. 3228).

The ALJ also reviewed plaintiff's records at Allied Health and Chiropractic, where plaintiff sought ongoing treatment and was under the supervision of Dr. Haynesworth.  (Tr. 280).  The ALJ considered a May 2021 MRI of the lumbar spine which showed a disc bulging at L4-S1

with mild multilevel facet effusions from L3-S1. (*Id.*; Tr. 3528). An MRI of plaintiff's right

knee found a grade II contusion with peripheral tear in posterior horn of lateral meniscus and a

partial thickness tear in the ACL. (*Id.*). The ALJ noted that on June 26, 2021,[8] plaintiff reported

that her hips were "doing okay," but her legs continued to be easily fatigued requiring her to rest

and sit down. (Tr. 280, Tr. 3494). Plaintiff additionally reported having significant range of

motion restrictions to the bilateral hips. (*Id.*). Examinations in July 2021 showed plaintiff had

difficulty changing positions and walking, and decreased range in motion. (*Id.*, citing Tr. 3511,

3527, 3538, 3542). In August of 2021, plaintiff underwent additional diagnostic imaging of the

lumbar spine, which found only mild degenerative disc disease at L5-S1, and no

spondylolisthesis. (*Id.*, citing Tr. 3688).

The ALJ reviewed the medical records showing plaintiff underwent a right knee

arthroscopic lateral meniscectomy, fenestration of peripheral right lateral meniscus posterior

horn partial thickness tear, thermal shrinkage, ACL insertion and excision of medial parapatellar

plica on October 14, 2021. (Tr. 280, Tr. 3567). The medical record documenting this procedure

reflected that plaintiff would be weightbearing as tolerated to the right lower extremity with

crutches and would start physical therapy the following week. (Tr. 3569). During an

examination with Dr. Amar Mutnal one month later on November 16, 2021, plaintiff reported the

pain she experienced prior to the procedure was gone. (Tr. 280, citing Tr. 3622).

The ALJ reviewed Dr. Mutnal's records from December 7, 2021, which noted plaintiff

was not fully compliant with physical therapy. (Tr. 280, Tr. 3618). Although plaintiff reported

---

[8] The ALJ notes the date of this record as June 26, 2021 (Tr. 280); however, the actual date of this record is June 16, 2021. (Tr. 3494).

continued hip and knee pain, Dr. Mutnal's examination found pain only with extreme flexion of the right knee, some edema, and negative straight leg raising. (*Id*., Tr. 3619). Plaintiff displayed tenderness to palpation in the right hip, antalgic gait, and pain with extreme range of motion. (*Id*.). Dr. Mutnal assessed a right hip strain. (*Id*.). Plaintiff's x-rays at the time were "unremarkable" and did not "reveal any clinically significant abnormalities" with only "minimal degenerative changes." (Tr. 3620). Dr. Mutnal recommended activity modification ("avoid sleeping on affected side"), injections, and physical therapy. (*Id*.). Although plaintiff continued to report pain across her lower back during an examination in May 2022, her reflexes were within normal limits; she had good strength and sensation; she ambulated without difficulty; and she had normal range of motion. (Tr. 280, citing Tr. 3678).

Plaintiff continued treatment at Allied Health and Chiropractic and continued to report right knee pain, left hip/thigh pain and low back pain. Plaintiff additionally reported numbness/tingling into her back and leg with sitting for only a few minutes. (Tr. 280, citing Tr. 3694, 3708, 3720, 3733). The ALJ then noted that although plaintiff continued to seek treatment of these conditions due to pain, her treatment remained conservative. (Tr. 280). During her physical therapy treatment at Allied on October 26, 2021, and then later on January 1, 2022, use of "ice, heat and provocative activities/home exercise program" were recommended, along with regular physical exercise. (Tr. 3697, 3736). Plaintiff denied taking any medication during this time. (*Id*.). Additionally, the record shows plaintiff's knee pain deceased with the use of a knee brace (Tr. 3716); however, despite the beneficial effects of the knee brace, plaintiff showed up to therapy without it and did not wear it at home at times. (Tr. 3718, 3725, 3727, 3729, 3731). In

November of 2021, plaintiff reported the use of a TENS unit on her back, knee, and neck "reduce[d] her pain from a 7/10 to a 2-3/10." (Tr. 3708).

In a treatment note dated June 11, 2021, plaintiff reported she was not taking any medication, even over the counter medication, and she continued with pain management intervention, i.e., cognitive behavior therapy, with Michael W. Faust, Ph.D. (Tr. 3508). Dr. Faust noted on July 16, 2021, he continued to work with plaintiff "focusing on cognitive skills given her distain for pain medications and her desire to try to cope with her pain on her own without using opioids." (Tr. 3509). On August 12, 2021, Dr. Faust noted his therapy continued with plaintiff regarding her attempts to cope with pain struggles without any prescription medication. (Tr. 3510). He noted that although she struggled with maintaining her own independent physical therapy regimen, she followed through with it, as well as continuing with activities of daily living despite pain perception. (*Id.*). Dr. Faust noted on September 27, 2021, he continued with cognitive strategies with plaintiff to manage her pain and she was "working very hard to try and improve herself and keep moving forward." (*Id.*). On October 26, 2021, plaintiff reported her treatment with Dr. Faust was "only on an as needed basis. . . ." [9] (Tr. 3694).

The ALJ's thorough review of the record evidence substantially supports her decision finding Dr. Haynesworth's assessment inconsistent with plaintiff's conservative treatment, diagnostic testing, and the record as a whole. The ALJ properly considered Dr. Haynesworth's medical opinion under the regulations governing the persuasiveness of an opinion, and plaintiff's

---

[9] The record does not reflect treatment with Dr. Faust after September of 2021.

16

assertions to the contrary are not well-taken. Considering that Dr. Haynesworth failed to provide any explanations for the opinions he expressed on the form medical assessment and the ALJ's discussion of record evidence that is inconsistent with the level of restrictions opined by Dr. Haynesworth, the Court concludes the ALJ did not err in finding Dr. Haynesworth's opinions unpersuasive.

Plaintiff additionally argues in essence that substantial evidence does not support the ALJ's analysis of Dr. Haynesworth's opinions, and she cites to other evidence of record of plaintiff's impairments in support of her argument. Plaintiff cites to medical records in particular noting her numerous reports to different providers of pain in her hips, knees, and legs. (Doc. 11 at PAGEID 3783-88). She also includes citation to a medical record from Allied completed by Shane O'Donnell, ACT, opining that plaintiff was of poor health and was expected to make poor progress with her recovery.[10] (*Id.* at PAGEID 3785) (citing Tr. 3691).

Indeed, the record contains frequent reports of pain by plaintiff and medical notes of plaintiff's leg, knee and back issues. (*See, e.g.,* Tr. 3426, 3447, 3458, 3480, 3511, 3515, 3519, 3521, 3523, 3525, 3527, 3534, 3542, 3706, 3712, 3714, 3720, 3729, 3733). However, the "Court is not free to substitute its judgment for the ALJ's if evidence reasonably supports the ALJ's conclusion." *Lisa L. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5034, 2022 WL 17687795, at *7 (S.D. Ohio Dec. 15, 2022), *report and recommendation adopted*, 2023 WL 2664426 (S.D. Ohio Mar. 28, 2023) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999)). "'[T]he ultimate findings of the ALJ 'are not subject to reversal merely because there exists in the record

---

[10] Mr. O'Donnell is a certified athletic trainer and not a physician as plaintiff mistakenly alleges.

17

substantial evidence to support a different conclusion.'" *Lisa L.*, 2022 WL 17687795, at *7

(quoting *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018)) (quoting

*Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). Here, the ALJ reviewed the medical

evidence and determined it did not support the level of restriction opined by Dr. Haynesworth.

In doing so, the ALJ supported her decision by setting forth "more than a scintilla of evidence"

from the medical record, including objective findings. *See Rogers*, 486 F.3d at 241. Although

plaintiff presents other evidence of record that may arguably support a different decision, it is not

the Court's role to second guess the ALJ where she has supported her decision with substantial

evidence. *See Nathaniel F. v. Comm'r of Soc. Sec.*, No. 2:20-cv-5364, 2022 WL 420083, at *8

(S.D. Ohio Feb. 11, 2022) ("Moreover, there is no question that crediting [the] Plaintiff's

argument here would require the Court to re-weigh evidence, something it simply cannot do.")

(citing *Colvin v. Comm'r of Soc. Sec.*, No. 5:18-cv-1249, 2019 WL 3741020, at *14 (N.D. Ohio

May 8, 2019), *report and recommendation adopted*, 2019 WL 4743624 (N.D. Ohio Sept. 30,

2019)). Plaintiff's assignment of error is overruled.

**3. The ALJ did not err in finding the opinions of Michael Faust, Ph.D., unpersuasive.**

On February 20, 2020, Dr. Faust completed an Independent Medical Examination Report

on plaintiff. (Tr. 3214-20). For purposes of workers' compensation, plaintiff was referred to Dr.

Faust for an assessment of whether she suffered from Major Depressive Disorder, Single

Episode, Moderate, as a result of a work injury that occurred on June 23, 2019. (Tr. 3213). The

work injury occurred while plaintiff was moving a patient when she worked as a certified

nursing assistant at Normandy Care Center. (Tr. 3215). She suffered an injury to her left hip

and left thigh. (*Id*.). During Dr. Faust's interview with plaintiff, she was frequently tearful and had to compose herself several times as she related the pain she had experienced and the "dramatic impact" the injury had on her life. (*Id*.). Plaintiff had not previously sought psychological treatment prior to her injury date. (*Id*.). She reported that she was not depressed prior to her injury; she "was up and moving and full of life." (Tr. 3216). After the injury, she did not want to get out bed; any movement hurt; and she cried every time she talked about it. (*Id*.).

Plaintiff related to Dr. Faust that she continued to experience sadness, anxiety, and depressed moods. (*Id*.). She denied the presence of panic attacks and suicidal ideations. (*Id*.). She experienced irritability and frustration which were not issues prior to her injury. (*Id*.). Plaintiff also reported sleep issues after the injury, and she was less interested in socializing. (*Id*.). She was able to take care of her personal hygiene, go to stores on her own, and drive independently. (Tr. 3217). Plaintiff reported leaving the house one time per day. (*Id*.). Plaintiff was not prescribed any medication at the time of the evaluation. (*Id*.).

Dr. Faust noted plaintiff appeared "psychologically sophisticated and show[ed] good insight into her overall emotional wellbeing." (Tr. 3218). Dr. Faust opined plaintiff "was oriented on all spheres and was able to understand and remember questions." (*Id*.). Dr. Faust estimated plaintiff to be of average intelligence. (*Id*.).

Plaintiff completed the MMPI-II[11] as a component of her psychological evaluation. (Tr. 3219). Based on her results, Dr. Faust noted her profile was "quite typical" for chronic pain and

---

[11] Minnesota Multiphasic Personality Inventory II.

19

pre-surgical populations. (*Id.*). Her results indicated a "significant degree of both psychological and physical distress and presence of an ego dystonic depressive reaction; this is perceived and communicated by [plaintiff] as global and diffuse chronic pain difficulties, and emotional and behavioral reactions to these difficulties." (*Id.*).

Based on his review of plaintiff's records, her test results, and his interview with plaintiff, Dr. Faust concluded plaintiff's depressive and anxious symptoms were a result of the June 23, 2019 injury. (Tr. 3220). He opined she was in need of psychological and possibly psychiatric intervention. (*Id.*).

The record also contains Dr. Faust's treatment notes with plaintiff after his initial assessment of her. (Tr. 3203-13, Tr. 3508-10).[12] Plaintiff participated in cognitive behavioral therapy with Dr. Faust approximately from July of 2020 through September of 2021. (Tr. 3213, 3510).

In his treatment note dated September 18, 2020, Dr. Faust documented that plaintiff was "extremely emotional initially and stated she has been struggling with pain, depression, anxiety and also noted a dramatic decrease in some of her activities secondary to her depression." (Tr. 3209). During this session, Dr. Faust worked on "psycho education" with plaintiff regarding the relationship between physical and emotional factors. (*Id.*). After doing so, plaintiff "reported a 40% decrease in depressed mood and anxiety following the intervention." (*Id.*). Dr. Faust's continued work with plaintiff included psycho education, pain management strategies, and

---

[12] The record contains duplicates of Dr. Faust's notes at Tr. 3213, 3264-3271, 3273-3294.

"review of systems. . . ." (Tr. 3208). Plaintiff recognized "incremental improvements," which Dr. Faust believed was "proof in and of itself that the intervention [was] working." (*Id*.).

In his November 19, 2020 treatment note, Dr. Faust documented that plaintiff reported less agitation since her last session. (Tr. 3207). Plaintiff had started taking Cymbalta. (*Id*.). However, the record does not indicate how long plaintiff continued taking Cymbalta. The latest date in the record evidencing plaintiff had a prescription for Cymbalta is January 4, 2021. (Tr. 3453). However, beginning February 2, 2021, and thereafter, plaintiff reported that she was not taking any medication. (*See, e.g.*, Tr. 3468, 3479, 3482, 3485, 3489, 3406). During her consultative examination with Bryan Krabbe, Psy. D., on May 4, 2021, plaintiff reported she did not use psychoactive medication. (Tr. 3258).

In his treatment note dated January 17, 2021, Dr. Faust wrote that plaintiff reported a 25% reduction in anxiety after their session. (Tr. 3205). On February 25, 2021, Dr. Faust noted plaintiff felt the communication strategies he taught her were "helpful for managing her agitations and then secondarily her pain perception." (Tr. 3204). During plaintiff's May 27, 2021 session with Dr. Faust she was very agitated and upset about situations which she "acknowledge[d] exacerbated her physical pain." (Tr. 3508). After her therapy session, plaintiff reported to Dr. Faust she was "40% calmer." (*Id*.). Dr. Faust continued to work with plaintiff on cognitive skills to cope with her pain. (Tr. 3509-10).

Dr. Faust completed a Medical Opinion questionnaire on behalf of plaintiff on December 12, 2021. (Tr. 3615-16). He opined, via checklist, that plaintiff would be limited but satisfactory in understanding and remembering very short and simple instructions and asking simple

questions or requesting assistance. (Tr. 3615). Dr. Faust further opined on the checklist that plaintiff would be seriously limited in her mental abilities and aptitudes needed to do unskilled work in the following areas: remember work-like procedures; carry out simple instructions; maintain attention for two-hour segments; maintain regular attendance and be punctual; work with others without being unduly distracted; make simple work-related decisions; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; respond appropriately to changes in routine work setting; deal with normal work stress; interact appropriately with the general public; maintain socially appropriate behavior; adhere to standards of neatness and cleanliness; and use of public transportation. (*Id*.). He further opined in checklist form that plaintiff would be unable to meet competitive standards to sustain an ordinary routine without special instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and travel to unfamiliar places. (*Id*.). In addition to the answers he gave on the checklist, Dr. Faust wrote that plaintiff would also have difficulty working at a regular job on a sustained basis due to "disruption in behavior, emotion & cognition, due to chronic, intractable pain & resulting distress, which will upset reliability." (Tr. 3616). He then opined plaintiff would be absent from work for more than four days per month. (*Id*.).

Dr. Faust wrote a letter dated December 16, 2021, supplementing his answers to the above questionnaire. (Tr. 3614). He opined plaintiff demonstrated on question III-E[13]

---

[13] Dr. Faust's reference to question III-E appears to be in error, as this question involved plaintiff's ability to use public transportation. (Tr. 3616).

cognitive and distractibility difficulties secondary to chronic pain perception and the combination of depressive features also impact sleep onset, sleep maintenance, and resulting fatigue and lethargy. It is my opinion that would seriously limit her ability to carry out detailed instructions, remember and understand detailed instructions, and also contend with the stress of either skills or semi-skilled work due to the life disruption identified with [plaintiff].

On III-F[14] similar to III-E, I do believe that the combination of physical, emotional, somatic, and intellectual incapacities would result in serious limitations with regard to traveling to unfamiliar places, and again this is based on reported distractibility, cognitive interference, and decreased frustration tolerance with planning, decision making, and problem solving.

(Tr. 3614).

The ALJ found Dr. Faust's opinions "not persuasive." (Tr. 283). The ALJ stated:

Dr. Faust provided very little support for his assessments, generally completing a simple check box form with no explanation of his assessed limitations. In addition, the undersigned notes that Dr. Faust completed this assessment in December 2021; however, the claimant's treatment records reflect no treatment with Dr. Faust after September 2021. Exhibit 27F. Additionally, her treatment records from Allied Health and Chiropractic reported that she was no longer obtaining mental health treatment from Dr. Faust. The claimant's most recent mental status evaluation found the claimant had a normal mood and affect and she was cooperative. Exhibit 37F. Further, even when obtaining mental health treatment from Dr. Faust, there is no evidence that the claimant required any more than conservative mental health treatment throughout the entire period at issue with no emergent or inpatient mental health treatment. Accordingly, the severity of limitations assessed by Dr. Faust are not consistent with the longitudinal medical evidence of record. Therefore, the undersigned finds the assessments of Dr. Faust are not persuasive.

(Tr. 283).

Plaintiff contends the ALJ failed to properly consider the supportability and consistency factors in assessing Dr. Faust's opinions for persuasiveness. Plaintiff alleges the ALJ erred by discrediting the opinions because they were in checkbox format. As discussed above in

---

[14] Question III F on the questionnaire stated: "Explain limitations falling in the three most limited categories (identified by bold type) and include the medical/clinical findings that support this assessment[.]" (*Id.*).

23

connection with the ALJ's assessment of Dr. Haynesworth's opinions, "it is not improper for an ALJ to take into consideration the format of a medical opinion, especially in light of other factors in the record that signal unreliability." *Kepke*, 636 F. App'x at 630.  The ALJ did not discredit Dr. Faust's opinions solely because they were set forth on a checkbox form.  Instead, the ALJ reasonably cited Dr. Faust's general lack of explanation for his opinions to support the serious limitations to which he opined.  The checkbox form invited Dr. Faust to "[e]xplain limitations falling in the three most limited categories . . . and include the medical/clinical findings that support this assessment," but Dr. Faust did not answer these questions and left them blank.  (Tr. 3615-16).  While Dr. Faust provided an explanatory letter dated December 16, 2021, his letter solely addressed plaintiff's ability to carry out detailed instructions, remember and understand detailed instructions, contend with the stress of either skilled or semi-skilled work, and travel to unfamiliar places.  (Tr. 3614).  While these explanations could support Dr. Faust's limitations on detailed, semi-skilled or skilled work or travel, there is nothing in the ALJ's RFC finding that contradicts Dr. Faust's opinion in this regard.  The ALJ found plaintiff was limited to simple, routine, and repetitive tasks.  (Tr. 278).  Therefore, to the extent Dr. Faust's opinions set forth in the checkbox form are supported by his explanations in the December 2021 letter relating to detailed, semi-skilled or skilled work or travel, those supported opinions have no bearing on the RFC ultimately determined by the ALJ.

Plaintiff also alleges the ALJ erred by relying on plaintiff's conservative mental health treatment in discounting Dr. Faust's opinions.  (Doc. 11 at PAGEID 3799).  The undersigned disagrees and finds the ALJ reasonably determined that Dr. Faust's opined limitations were not

supported by the conservative treatment plaintiff received for her mental health issues.  As the ALJ accurately determined, during the period plaintiff received treatment from Dr. Faust, she received no emergent or inpatient mental health treatment.  (Tr. 283).  Plaintiff engaged primarily in cognitive behavioral therapy and psycho education with Dr. Faust and only medicated with Cymbalta for a few months according to her medical records.  The ALJ properly considered the conservative nature of plaintiff's treatment in assessing the persuasiveness of Dr. Faust's opinions.  *See Wendy D. H. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-387, 2022 WL 621433, at *4 (S.D. Ohio Mar. 3, 2022) ("conservative" treatment and clinical findings are valid considerations in assessing persuasiveness of opinion) (citing *Kepke*, 636 F. App'x at 631 ("The ALJ noted that the records indicate [plaintiff] received only conservative treatment for her ailments, a fact which constitutes a 'good reason' for discounting a treating source opinion."); *Lester v. Comm'r of Soc. Sec.,* 596 F. App'x 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the [plaintiff] was receiving conservative treatment)).  The ALJ's finding that Dr. Faust's opinions were not supported by plaintiff's conservative mental health treatment is substantially supported.

Plaintiff next contends the ALJ erred by relying on "generic mental health treatment notes which showed normal mood and affect."  (Doc. 11 at PAGEID 3799).  Plaintiff asserts this failed to "paint a full picture" of her mental health problems.  (*Id*.).

The ALJ explanation is in keeping with the regulatory requirement to consider the consistency of Dr. Faust's opinions in light of the other record evidence.  20 C.F.R. § 404.1520c(c)(2).  In assessing Dr. Faust's opinions, the ALJ cited to Exhibit 37F, which contains

treatment notes from Allied Health and Chiropractic.  (Tr. 283).  On October 26, 2021, after plaintiff stopped her regular treatment with Dr. Faust, mental status assessments showed plaintiff "was observed to be alert and oriented X 3 (person place time), normal mood and affect and cooperative."  (Tr. 3694).  The same assessment is noted in Allied Health and Chiropractic records on November 23, 2021, December 21, 2021, and January 21, 2022.  (Tr. 3708, 3720, 3733).  Elsewhere in her opinion, the ALJ discussed December 29, 2021 clinic notes that assessed "moderate" depression on screening[15] with examination findings of normal behavior, normal thought content, and normal judgment at a time when plaintiff was not seeking mental health treatment from Dr. Faust.  (Tr. 281, citing Tr. 3662).  As the ALJ reasonably determined, Dr. Faust's December 2021 "serious" limitations were inconsistent with the other medical records reflecting normal and less severe objective findings.  The ALJ's consistency finding is supported by substantial evidence.

Plaintiff finally argues the ALJ erred by discrediting Dr. Faust's opinions because he had stopped seeing plaintiff three months before filling out the medical source statement.  (Doc. 11 at PAGEID 3798).  Given the other reasons cited by the ALJ in her supportability and consistency analysis, any error by the ALJ in relying on lack of temporal proximity is harmless at best.

The ALJ's explanation for finding Dr. Faust's opinions unpersuasive is clearly articulated and supported by substantial evidence.  Plaintiff's assignment of error is overruled.

---

[15] The screening instrument rated the severity of depression from 1-4 (minimal depression), 5-9 (mild depression), 10-14 (moderate depression), 15-19 (moderately severe depression), and 20-27 (severe depression).  (Tr. 3660). Plaintiff's depression score was 11, indicating "moderate" depression.

**III.    Conclusion**

The ALJ satisfied the requirements of 20 C.F.R. § 404.1520c(b)(2) in evaluating the opinions of Dr. Haynesworth and Dr. Faust.  The ALJ carefully considered the totality of the evidence, applied the proper standards, and clearly explained her persuasiveness findings. Accordingly, the Court finds the ALJ's decision is supported by substantial evidence.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's statement of errors (Doc. 11) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

2. Judgment is entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:  7/18/2024

Karen L. Litkovitz
Chief United States Magistrate Judge

27